STATE v. FRED SOWARDS et al.

No. A—9404.  Aug. 12, 1938.
(82 P. 2d 324.)

432

434

438

Bill Vassar, Co. Atty., and Joe Young, Asst. Co. Atty., both of Chandler (Clyde L. Andrews, of Chandler, of counsel), for plaintiff in error.

Courtland M. Feuquay and Embry & Embry, all of Chandler, for defendants in error.

DOYLE, J. This case comes to this court under Procedure Criminal, sec. 3191, O. S. 1931, 22 Okla. St. Ann. § 1053, providing that:

"Appeals to the Criminal Court of Appeals may be taken by the state in the following cases and no other:

"1. Upon judgment for the defendant on quashing or setting aside an indictment or information.

"2. Upon an order of the court arresting the judgment.

"3. Upon a question reserved by the state."

Under this section the state has the right to appeal from an order sustaining a demurrer to an indictment or information, and upon reserved questions, such an appeal reserves for decision only a question of law, where the indictment or information is dismissed and the defendant discharged without direction or permission of the trial court to amend the information, or that the indictment be submitted to that of another grand jury.

In State v. Walton, 30 Okla. Cr. 416, 236 P. 629, it is held:

"The state has the right to appeal from an order sustaining a demurrer to an indictment or information; such an appeal reserves for decision only a question of law, where the demurrer is sustained and the defendant discharged without direction by the trial court that the same be resubmitted or that a new information be filed."

In the opinion we said (page 422) :

"A judgment is the final consideration and determination of a court of competent jurisdiction on the matters submitted to it, and a judgment sustaining a demurrer under the statute is as far-reaching and conclusive as to the defendant's liability for the crime charged as though it has been rendered upon a verdict of not guilty, where the court

does not direct a resubmission of the case, or direct that a new information be filed." State v. Robertson, 28 Okla. Cr. 234, 230 P. 932; State v. Dennis, 28 Okla. Cr. 312, 230 P. 935.

It may be well for us to say here that the first count of the information attempts to charge the obtaining of property from another with his consent, induced under color of official right. It wholly lacks any allegation that the property was obtained from the complaining witness with his consent. That the property was obtained with the consent of the complaining witness is an essential allegation, since consent is one of the elements of the crime. Section 2073, O. S. 1931, 21 Okla. St. Ann. § 1481.

Every essential element embraced in the definition of the crime sought to be charged must be alleged in the information or indictment, and if any of the essential elements of the crime is omitted, such omission cannot be supplied by intendment or implication. Connard v. State, 56 Okla. Cr. 134, 35 P. 2d 278.

If the sufficiency of count one to charge an offense was properly before this court, we would hold the same to be insufficient.

Under the provisions of Criminal Procedure, only one offense may be charged in the indictment or information, but where the same act may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty, the different offenses may be set forth in separate counts in the same indictment or information, and the accused may be convicted of either offense. Section 2886, O.S. 1931, 22 Okla. St. Ann. § 404.

In such cases the indictment or information must show on its face that the separate counts are all based on the one and the same act or transaction.

The information in this case meets this requirement. Therefore, the court erred in sustaining the defendants'

motions to require the state to elect upon which count of the information it would prosecute.

The first proposition presented is settled by the decisions of this court. See Boultinghouse v. State, 24 Okla. Cr. 369, 218 P. 173; Wear v. State, 30 Okla. Cr. 118, 235 P. 271; Keenan v. State, 33 Okla. Cr. 400, 243 P. 1001; Brock v. State, 39 Okla. Cr. 162, 263 P. 1115.

It is the contention of counsel for the state that the trial court erred in sustaining the separate demurrer of the defendant, Fred Sowards, who on the date alleged in the information was an administrative officer, and the crime charged in the information was an offense involving "misconduct in office," and the district court of Lincoln county had exclusive jurisdiction of said offense.

Counsel for the defendants in their brief say:

"Willard Sowards is not alleged to be an officer of any kind in the two counts of the information. Fred Sowards is alleged to be a maintenance superintendent of the State Highway Commission, in and for District 'C.' There is no such officer mentioned in any statute, or the Constitution of the state, and no board or commission is authorized or directed to appoint any one to any such office, and no board or commission is authorized or directed to create any such office."

The primary question presented in this case is what is public office and how distinguished from employment?

The first count of the information is based on Penal Code, sec. 2073, O.S. 1931, 21 Okla. St. Ann. § 1481, providing that:

"Extortion is the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right."

This offense is a misdemeanor under Penal Code, sec. 2076, O.S. 1931, 21 Okla. St. Ann. § 1484, providing that:

"Every person who commits any extortion under color of official right, in cases for which a different punishment is not prescribed by this Code, or by some of the statutes, which it specifies as continuing in force, is guilty of a misdemeanor."

The second count of the information is based upon section 2469, art. 79, ch. 15, O.S. 1931, 21 Okla. St. Ann. § 269, providing that:

"Every executive officer who asks or receives any emolument, gratuity or reward, or any promise of any emolument, gratuity or reward, excepting such as may be authorized by law, for doing any official act, is guilty of a misdemeanor."

Section 2458, under the same article, 21 Okla. St. Ann. § 279, provides as follows:

"The various provisions of this article which relate to executive officers apply in relation to administrative officers in the same manner as if administrative and executive officer were both mentioned together."

In the case of Estes v. Crawford, 62 Okla. Cr. 156, 60 P. 2d 798, 800, we said:

"Section 10 of article 7 of the Constitution [Okla. St. Ann. Const. art. 7, § 10] defines the jurisdiction of district courts. We quote a part of said section 10 as follows: 'The district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law.'

"Section 12 of article 7 [Okla. St. Ann. Const. art. 7, § 12] defines the jurisdiction of county courts. We quote a part of said section 12 as follows: * * *

" 'Provided, That the county court shall not have jurisdiction in any action for malicious prosecution, or in any action for divorce or alimony, or in any action against officers for misconduct in office.' * * *

"It is insisted that since a violation of section 2034, supra [21 Okla. St. Ann. § 242] is declared by its provisions

to be a misdemeanor, jurisdiction of any violation thereof is conferred upon the county court exclusively.

"With this contention we do not agree. It is our opinion that the Constitution confers original jurisdiction of all such offenses, whether felony or misdemeanor, upon the district court. And the constitutional prohibition in article 7, § 12, against the exercise by the county court of jurisdiction in actions against officers, includes all actions against such officers for misconduct, and jurisdiction over such proceedings is in the district court."

And see State v. Young, 20 Okla. Cr. 397, 203 P. 489; State ex rel. v. Russell, Judge, 33 Okla. 141, 124 P. 1092; State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77.

If a district maintenance superintendent of the State Highway Commission is an officer, the district court of Lincoln county had exclusive jurisdiction to try the information in this case.

There are certain criterions which have been established both upon reason and authority, and have been applied as tests in decided cases; and some of these tests in our opinion furnish sufficient grounds for the decision of the question whether a position is an office or not.

"A public office is the right, authority, and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." Mechem on Pub. Officers, sec. 1.

Public offices are created for the purpose of effecting the ends for which government has been instituted, which are the protection, safety, prosperity, and happiness of the people; and not the profit, honor, or private interest of any one man, family, or class of men. In our form of government, it is fundamental that public offices are a public trust, and that the persons to be appointed should be selected solely with a view to the public welfare. In offices

which are created by the Legislature, where the method of appointment is not prescribed by the Constitution, the Legislature, if no limitation is put upon its power by the Constitution, can take upon itself the responsibility of selecting the persons to be appointed, or can confer the power of appointment upon public officers, commissions or boards, or upon the inhabitants of cities, towns or districts.

It is not necessary to the creation of an office that the Legislature declare in express words that such an office is created. The use of any language which shows the legislative intent to create the office is sufficient. See Childs v. State, 4 Okla. Cr. 474, 113 P. 545, 33 L.R.A., N.S., 563; Guthrie Daily Leader v. Cammeron, Auditor, 3 Okla. 677, 41 P. 635.

There are innumerable decisions defining the word "office" or the words "public office."

In State ex rel. Newman v. Skinner, 128 Ohio St. 325, 191 N.E. 127, 93 A.L.R. 331, the court said (page 128):

"A public officer, as distinguished from an employee, must possess some sovereign functions of government to be exercised by him for the benefit of the public, either of an executive, legislative, or judicial character. * * *

"Textwriters find it difficult to define with accuracy the term 'public officer' as distinguished from 'employee.' As stated by Judge Spear in State v. Hunt, 84 Ohio St. 143, 95 N.E. 666, 668: 'Manifestly, however, each case should be decided on its peculiar facts, and involves necessarily a consideration of the legislative intent in framing the particular statute by which the position, whatever it may be, is created.' "

In Groves v. Barden, 169 N.C. 8, 84 S.E. 1042, L.R.A. 1917A, 228, Ann. Cas. 1917D, 316, the court in discussing the essentials of an office said:

"While the line between offices or places of trust and profit is not clear, an 'office' is a public position to which a portion of the sovereignty of the country attaches for the

time being, and which is exercised for the benefit of the public, and within the constitutional provision there is no distinction between 'offices' and 'places of trust or profit' with respect to the inhibition against double office-holding; hence, a rural mail carrier was a 'public officer,' and his holding of a state office subjected him to the statutory penalties."

And see Abbott v. McNutt, 218 Cal. 225, 22 P. 2d 510, 89 A.L.R. 1109.

In State of Montana ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A.L.R. 583, annotation, distinction between office and employment, at page 595, it is said:

"It may be stated as a general rule, deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional and intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements."

Generally, as to distinction between office and employment, see annotations in 93 A.L.R. 333; 105 A.L.R. 1237.

In Attorney-General v. Tillinghast, 203 Mass. 539, 89 N.E. 1058, 17 Ann. Cas. 449, it is held (page 1060):

"A public officer [as distinguished from an employee] is one 'whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power whether great or small, and in whose proper performance all citizens irrespective of party are interested, either as members of the entire body politic or of some duly established subdivision of it.'* * * 'Where an employment is a continuous one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer.' "

It is stated in 22 R.C.L. 380, that:

"It is sometimes said that an office is a public charge or employment, but it frequently becomes necessary to distinguish between a public office and a public employment. The term 'employment' is the more comprehensive, and while an office is an employment, it does not follow that an employment is an office. Thus, when an employment is a continuing one, which is defined by rules prescribed by law and not by contract, such an employment is an office, and the person who performs it is an officer. On the other hand, the fact that the authority of one public officer is subordinate to that of another does not prevent the former from being an officer as distinguished from a mere employee. A subordinate or inferior officer is none the less an officer. Even where the appointment is in the nature of an employment, the appointee may be a public officer if the necessary elements of an office are present. But on the whole an officer is distinguished from the employee in the greater importance, dignity, and independence of his position, in being required to take an official oath and perhaps to give an official bond, in the more enduring tenure, and in the fact that the duties of the position are prescribed by law.

"The difficulties in distinguishing an office from an employment may be resolved by constitutional definitions, as, for example, that an office is a public position created by the Constitution or law, continuing during the pleasure of the appointing power or for a fixed time, with a successor elected or appointed; while an employment is an agency, for a temporary purpose, which ceases when that purpose is accomplished."

In State v. Linn, 49 Okla. 526, 153 P. 826, Ann. Cas. 1918B, 139, the Supreme Court of this state held (page 827):

"The general rule, in the absence of special constitutional provision, is that all officers whose duties pertain to the exercise of the police power of the state are in that sense state officers, and under the control of the Legislature, even though they may be officers of a municipality and charged with the enforcement of the local police regulations of such municipality."

The precise question presented by this appeal is, whether the place or position of district maintenance superintendent

of the State Highway Commission, according to the legal acceptation of the term, is an office?

The Constitution of this state (article 16, sec. 1 [Okla. St. Ann. Const. art. 16, § 1]) provides that:

"The Legislature is directed to establish a Department of Highways, and shall have the power to create improvement districts and provide for building and maintaining public roads, and may provide for the utilization of convict and punitive labor thereon."

The following statutes, in the order of their passage, are involved in determining the question in this case.

The first State Highway Commission was created by chapter 48, p. 51, Session Laws, 1923-24, entitled:

"An Act creating a State Highway Commission, providing for the appointment of officers and employees, defining powers and duties, providing for the construction and maintenance of a connected system of State Highways, securing to the state the benefit of all present and future Federal Aid that may be offered by the Federal Government, defining the powers of the State Highway Commission;" etc.

The present State Highway Commission was created by chapter 12, Session Laws 1933, 69 Okla. St. Ann. § 21 et seq., entitled:

"An Act creating a Department of Highways under supervision and control of a commission to be known and designated as the State Highway Commission of the State of Oklahoma, to be composed of four members; prescribing the manner and method of appointment, fixing tenure of office and salary of each of the members thereof; prescribing the powers and duties of said Commission and members thereof; providing for the appointment and employment of a Chief Engineer, prescribing his duties and power; providing for and authorizing employment by said Commission, its Secretary and Engineer, of clerical help, laborers and other employees, and for the payment of salaries and wages therefor, and the method and manner of payment of same."

Section 6 of ch. 12, supra, 69 Okla. St. Ann. § 26, provides as follows:

"The said State Highway Commission hereby created is vested with the powers and duties necessary and proper to enable the commission to fully and effectively enable it to carry out all the objects of this act and in addition thereto shall have the following specific powers and duties:

"(a) Have supervision of highways and bridges which are constructed, improved or maintained, in whole or in part, by the aid of State moneys, and of highways constructed, in whole or in part, by the aid of moneys appropriated by the United States Government so far as such supervision is consistent with the Acts of Congress relating thereto.

"(b) Prescribe rules and regulations not inconsistent with this Act or other laws of the State of Oklahoma, fixing the duties of all persons employed by the State Highway Commission, and prescribing the manner of cooperation between county, township and city officials with the State Highway Commission.

"(c) Investigate and determine upon the various methods of road and bridge construction in the different sections of this State and as to the best methods of construction and maintenance of state highways and bridges.

"(d) Aid at all times in promoting highway improvement and maintenance throughout the State.

"(e) Let, or supervise the letting of, all contracts for construction or improvement of state highways or any contract for road or bridge construction or improvement where the work is being done in whole or in part with federal moneys.

"(f) The commission shall determine the number of employees necessary for the proper and effective discharge of the duties and powers hereby vested in it and shall fix and determine the salaries or wages to be paid for the services rendered or labor performed and may change, regulate and control the same from time to time as it, by majority action, may determine; salaries and wages to be in accord with other departments of state for like character of service.

"(g) The chief engineer, with the concurring approval of a majority of the members of the commission, shall be empowered to appoint and employ such assistant engineers, clerical help, laborers and other employees as may be deemed necessary for the proper discharge of the duties connected with the construction, repair and maintenance of highways under the supervision and control of the State Department of Highways, and all such assistant engineers, clerical help, laborers and other employees shall possess such powers as may be delegated and perform such duties as may be assigned to them by the said Chief Engineer and the salaries and/or wages of each shall be determined by the Commission."

Section 8 of said Act, 69 Okla. St. Ann. § 21, note, is the repealing section, and said repealing clause fails to mention section 10080, St. 1931, 69 Okla. St. Ann. § 26, note, and therefore leaves such section in full force and effect, providing:

"The commission, in addition to the appointment of a state highway engineer and a secretary, as herein provided, is also authorized and empowered to employ such other assistants and clerical help as may, in the judgment of the commission, be necessary to fully and properly carry out the objects and purposes of this act."

The Constitution of this state (article 15, § 1, Okla. St. Ann. Const. art. 15, § 1) provides that all officers shall take and subscribe an oath or affirmation. The statute requires that every person elected or appointed to any office shall, before entering upon the duties thereof, take an oath or affirmation to support the constitutions of the United States and of the state, and also an oath of office. Section 3403, O.S. 1931, 51 Okla. St. Ann. § 2.

Section 10084, O.S. 1931, 69 Okla. St. Ann. § 28, provides in part as follows:

"All members of the commission, engineer, secretary and every other person appointed to office or employed by the commission, shall, before entering upon the duties of his or her office or employment, take and subscribe to an

oath or affirmation to support the constitution of the United States and of the State, and to faithfully and honestly discharge the duties of such office or employment. * * *

"The engineer or any other officer or employee of the commission, who has custody or control of property or funds of the state, shall give a good and sufficient bond, in an amount and with sureties satisfactory to the commission, conditioned upon the faithful discharge of the duties of their respective offices and accounting for all property and funds coming into their hands by, through or from, such office. Any officer or employee who shall violate the provisions of this section shall be guilty of a misdemeanor, and shall be cause for impeachment."

Chapter 22, Session Laws, 1933, 69 Okla. St. Ann. § 45, provides in part as follows:

"Section 1. Section 10091, Okla. Stats. 1931, is hereby amended to read as follows:

"Section 10091. The construction and maintenance of the State Highway System, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, which is hereby authorized, empowered and directed to take whatever steps may be necessary to cause said State Highway system to be constructed at the earliest possible time, consistent with good business management and fund available after this act takes effect, and also to provide for the maintenance of said State Highway system. The State Highway Commission shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations it may deem necessary, not inconsistent with this act, for the proper management and conduct of said work, and for carrying out all the provisions of this act, in such manner as shall be to the best interest and advantage of the people of this state."

Chapter 48, Session Laws 1933, 69 Okla. St. Ann. § 26 note, is:

"An Act validating the appointments and employments of agents, servants and employees of the State Highway Commission under previous existing Statutes" prior to the enactment of chapter 12, Session Laws 1933.

Section 1 provides as follows:

"That all appointments, employments and contract duties existing between the former Highway Commission of the state of Oklahoma and all agents, servants, employees and contractors be, and the same are, hereby in all respects authorized, ratified, confirmed and approved."

We do not deem it necessary to further quote provisions of the various acts as compiled in chapter 50, Okla. Stats. 1931.

The Supreme Court of this state holds that:

"The State Highway Commission is created and vested with powers and duties necessary to fully and effectively carry out all of the objects of the act creating it." Wentz v. Dawson, 149 Okla. 94, 299 P. 493, 494; Hawks v. Seay, 150 Okla. 160, 1 P. 2d 148.

"Rules and regulations adopted by the state highway commission under authority of a statute and not inconsistent with the purpose of such statute are binding and controlling in all transactions had thereunder, and the same rules are applicable thereto in determining whether a duty arising thereunder is discretionary or ministerial as applied to a statute." State Highway Commission v. Younger, 170 Okla. 614, 41 P. 2d 686.

"The provision of the charter of the city of Oklahoma City which provides, 'The Board of Commissioners (now mayor and council) * * * may create such other offices necessary to the proper and efficient conduct of the affairs of the city' authorizes the creation of the office of deputy city clerk." Oklahoma City v. Century Indemnity Co., 178 Okla. 212, 62 P. 2d 94.

And held further that Laws 1923-24, ch. 48, creating a state highway construction and maintenance fund, held valid appropriation of public funds for purposes stated, and not in contravention of Const. art. 5, sec. 55, [Okla. St. Ann. Const. art. 5, § 55], providing that no money shall be paid out of the state treasury except by appropriation. Edwards v. Childers, 102 Okla. 158, 228 P. 472.

Patillo v. Moore Bros. Ice & Milling Co., 181 Okla. 318, 73 P. 2d 842, was a case where a wagon loaded with a tank broke down upon a paved highway. Watie Patillo, a district maintenance superintendent of the state highway commission, removed the wagon, that in his judgment was causing an obstruction of the highway. In the opinion of the Supreme Court, Watie Patillo is referred to as an officer. He was clothed with the protection of an officer in being liable only in the event of an abuse of authority or discretion.

In the course of the opinion it is said (page 843) :

"What is the degree of care that must be exercised by a highway officer when removing a disabled vehicle from the highway ? *   *   *

"The decision of a highway officer that a disabled vehicle is an obstruction of the highway is generally conclusive, except where there has been an abuse of authority or discretion. But where an officer is charged with a duty to remove obstructions and he has determined that a disabled vehicle is an obstruction, he then must use due and reasonable care, under the circumstances, in removing the vehicle and its contents."

It is a well settled rule that a penal statute must be construed with such strictness as to carefully guard the rights of the accused and at the same time preserve the obvious intention of the Legislature.

In this case the distinction between an officer and an employee is important, because the courts—adopting the principle of strict construction in applying statutes declaring certain acts on the part of an officer to be crimes—will refuse to regard as an officer a person who, while in the public service, does not occupy a position established as a result of the action direct or indirect of the Legislature, with a term, duties, and tenure. 29 Cyc. p. 1367.

The rule of strict construction of a penal statute is not violated by giving its words a reasonable meaning according to the sense in which they were intended, disregarding

captious objections. State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77.

Applying the principles enunciated in the foregoing authorities the position of district maintenance superintendent of the State Highway Commission has all the indicia of a public office.

Under the constitutional provision, art. 16, sec. 1, supra, and the statutes enacted effectuating said constitutional provision, the power of appointment comes from the state, the authority is derived from the law; and the duties are exercised for the benefit of the public, and we think the position is a public office within the definitions given by the courts and textwriters as to what in law constitutes a public office or a public officer.

It is our opinion that persons occupying the position of district maintenance superintendent of the State Highway Commission, under our existing laws, are public officers.

It follows that the court below erred in its judgment sustaining the demurrer to count two of the information, on the ground that the court was without jurisdiction of the offense charged, because the defendant, Fred Sowards, was not, as alleged, an officer under the law, and for that reason the district court did not have jurisdiction to try the information.

In the state's petition in error the prayer is that the judgment of the court below be reversed, the case remanded to the district court of Lincoln county with direction that the separate demurrers of the defendants be overruled and the case be for trial.

For the reasons hereinbefore stated, the prayer must be denied. It is so ordered.

DAVENPORT, P. J., and BAREFOOT, J., concur.